## DOMINION RESERVES, INC v MICHIGAN CONSOLIDATED GAS COMPANY

Docket No. 216331. Submitted February 1, 2000, at Grand Rapids. Decided March 10, 2000, at 9:00 A.M. Leave to appeal sought.

Dominion Reserves, Inc., brought an action in the Kent Circuit Court against Michigan Consolidated Gas Company (MichCon) and Michigan Gathering Company, seeking a declaration with respect to the parties' rights under contracts between the plaintiff and MichCon for the transportation of the plaintiff's natural gas in the defendants' pipeline. The court, Donald A. Johnston, J., granted summary disposition, and issued a declaratory judgment, in favor of the plaintiff. The defendants appealed.

The Court of Appeals *held*:

Initial jurisdiction over this case involving the interpretation of complex gas transportation contracts properly lies with the Public Service Commission, not the circuit court, in light of the PSC's statutory authority to review gas transportation contracts for compliance with PSC rules and regulations and in light of the doctrine of primary jurisdiction.

Reversed; matter referred to the PSC.

ADMINISTRATIVE LAW — ADMINISTRATIVE AGENCIES — COURTS — PRIMARY JURISDICTION.

Primary jurisdiction is the doctrine under which a court of general jurisdiction considers whether to defer to an administrative agency where there is concurrent original subject-matter jurisdiction regarding a disputed issue in the court and the administrative agency; in deciding whether it should defer to the administrative agency, the court should consider the extent to which the agency's specialized expertise makes it a preferable forum for resolving the issue, consider the need for uniform resolution of the issue, and consider the potential that judicial resolution of the issue will have an adverse effect on the agency's performance of its regulatory responsibilities.

*Varnum, Riddering, Schmidt & Howlett, L.L.P.* (by *Jack D. Sage* and *Mark L. Collins*) and *Baker &*

*Botts, L.L.P.* (by *Bruce F. Kiely* and *Mary Ann Poirier*), for the plaintiff.

*Foster, Swift, Collins & Smith, P.C.* (by *William K. Fahey* and *Barbara J. Dyer*) and *Dennis R. O'Connell* and *Glen W. Johnson,* for the defendants.

Before: FITZGERALD, P.J., and SAAD and WHITBECK, JJ.

PER CURIAM. Defendants appeal as of right the trial court order granting summary disposition pursuant to MCR 2.116(C)(10) in favor of plaintiff regarding its complaint for declaratory relief with regard to the parties' contracts for transmission of plaintiff's natural gas through defendants' pipeline. We reverse the trial court's order and refer this matter to the Michigan Public Service Commission.

This case involves the interpretation of three complex contracts between plaintiff and defendant Michigan Consolidated Gas Company (MichCon) pursuant to which defendant provided plaintiff with natural gas transportation and treating services. The contracts, which are essentially identical, were executed on February 6, 1995. Article VI(e) of the contract provides:

> At each Delivery Point the carbon dioxide content of the gas shall not exceed two (2%) mole percent; at any Receipt Point, the carbon dioxide content of the Gas shall not exceed 25 mole percent, provided, however, that Shipper's aggregate Receipt Point gas hereunder shall not exceed 14 mole percent. . . .

Article VI(j) states:

> In the event the Gas delivery by Shipper at the Receipt Point(s) fails at any time to meet these quality specifications, MichCon shall notify Shipper of such deficiency and

thereupon may, at its option, refuse to accept deliveries pending correction. Upon demonstration acceptable to MichCon that the Gas being tendered for delivery meets these quality specifications or that Shipper has arranged for the necessary treatment, processing or other action required for the Gas to meet these quality specifications, MichCon shall commence or resume, as the case may be, taking delivery of Gas.

On February 6, 1995, the parties signed a letter entitled "Commitment Of Antrim Gas For Gas Transportation Service," which was made part of the contract. Paragraph 4 of the commitment states:

If Producer nominates Gas Transportation Service for any portion of the Committed Antrim Gas, and, if at any time, for any reason, MichCon is unable or unwilling to provide Gas Transportation Service pursuant to such nomination ("Service Cessation Event"), MichCon shall notify Producer in writing within twenty-four (24) hours of such Service Cessation Event, and the portion of the Committed Antrim Gas impacted by such Service Cessation Event shall be released from any commitment under this letter ("Released Antrim Gas"). Furthermore, MichCon shall notify Producer in writing regarding the date on which Gas Transportation Service again will be available for any portion of the Released Antrim Gas. Upon receipt of such written notification of the termination of a Service Cessation Event due to reasons other than force majeure, Producer may, at its option, recommit all or any portion of the Released Antrim Gas to the Service Agreement within three hundred and sixty-five (365) days of receipt of such notification. Upon receipt of such written notification of the termination of a Service Cessation Event due solely to force majeure, Producer shall recommit the Released Antrim Gas within two (2) business days of receipt of such notification. Any Released Antrim Gas recommitted pursuant to this paragraph 4 shall have the same priority under the Service Agreement that such Gas received prior to its release.

Finally, paragraph 6 of the commitment letter states, "The letter has been executed in connection with the execution of the Service Agreement and in the event of a conflict between this letter and the Service Agreement, the provisions of the Service Agreement shall prevail."

On February 25, 1998, defendant notified plaintiff that some of the gas plaintiff delivered to defendant for transmission exceeded the $CO_2$ (carbon dioxide) content permitted by the contract. At that time, plaintiff asserted that if defendant refused to accept this gas, its refusal would release the gas from the contractual commitment pursuant to ¶ 4 of the commitment letter. The parties negotiated an interim agreement involving defendant's treatment of the out-of-specification gas at plaintiff's additional expense, but defendant denied that its refusal to accept the off-quality gas released that gas from the contractual commitment. Plaintiff then brought this declaratory judgment action seeking interpretation of the contracts.

Defendants argue here, as they did before the trial court, that the PSC has primary jurisdiction over this controversy and, therefore, the trial court should have referred this matter to the PSC for resolution.[1]

The doctrine of primary jurisdiction and its proper application are described in *Rinaldo's Constr Corp v*

---

[1] Defendants raised the affirmative defense of the PSC's primary jurisdiction in the answer to plaintiff's complaint. The trial court, however, failed to address the issue. Cf. *Travelers Ins Co v Detroit Edison Co*, 237 Mich App 485; 603 NW2d 317 (1999), wherein this Court held that the affirmative defense of "primary jurisdiction" is waived if not stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118.

*Michigan Bell Telephone Co,* 454 Mich 65, 70-72; 559 NW2d 647 (1997), as follows:

Primary jurisdiction "is a concept of judicial deference and discretion." LeDuc, Michigan Administrative Law, § 10:43, p 70. The doctrine exists as a "recognition of the need for orderly and sensible coordination of the work of agencies and of courts." *White Lake Improvement Ass'n v City of Whitehall,* 22 Mich App 262, 282; 177 NW2d 473 (1970). In *White Lake,* the Court of Appeals correctly noted that "[t]he doctrine of primary jurisdiction does not preclude civil litigation; it merely suspends court action." *Id.* at 271. Thus, LeDuc notes, "[p]rimary jurisdiction is not a matter of whether there will be judicial involvement in resolving issues, but rather of when it will occur and where the process will start." *Id.* at § 10:44, p 73. A court of general jurisdiction considers the doctrine of primary jurisdiction "whenever there is concurrent original subject matter jurisdiction regarding a disputed issue in both a court and an administrative agency." *Id.* at § 10:43, p 70.

In *Attorney General v Diamond Mortgage Co,* 414 Mich 603, 613; 327 NW2d 805 (1982), we applied the United States Supreme Court's definition of the doctrine from *United States v Western P R Co,* 352 US 59; 77 S Ct 161; 1 L Ed 2d 126 (1956):

" 'Primary jurisdiction' . . . applies where a claim is originally cognizable in the courts and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body."

The Court observed, "No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.* at 64.

Professors Davis and Pierce identify three major purposes that usually govern the analysis when a court is deciding whether to defer to an administrative agency under this doctrine. First, a court should consider "the

extent to which the agency's specialized expertise makes it a preferable forum for resolving the issue. . . ." Second, it should consider "the need for uniform resolution of the issue . . . ." Third, it should consider "the potential that judicial resolution of the issue will have an adverse impact on the agency's performance of its regulatory responsibilities." Davis & Pierce, 2 Administrative Law (3d ed), § 14.1, p 272. Where applicable, courts of general jurisdiction weigh these considerations and defer to administrative agencies where the case is more appropriately decided before the administrative body.

The PSC has the jurisdiction to hear and decide breach of contract claims. See, e.g., *Energy Reserves, Inc v Consumers Power Co*, 221 Mich App 210, 216; 561 NW2d 854 (1997); *North Michigan Land & Oil Corp v Public Service Comm*, 211 Mich App 424, 437; 536 NW2d 259 (1995); *Miller Bros v Public Service Comm*, 180 Mich App 227, 233; 446 NW2d 640 (1989). While cases so holding have dealt with gas purchase contracts, the principle applies with equal force to gas transportation contracts. MCL 483.110; MSA 22.1320 confers on the PSC the authority to approve contract changes, and does not distinguish between gas purchase and gas transportation contracts. Implicit in the authority conferred by MCL 483.110; MSA 22.1320 is the power to inspect and interpret provisions in contracts to determine whether they comply with PSC rules and regulations. *Antrim Resources v Public Service Comm*, 179 Mich App 603, 611-612; 446 NW2d 515 (1989). When claims are governed by the PSC regulatory scheme, as are plaintiff's claims, the PSC's legislative authority and the doctrine of primary jurisdiction place initial jurisdiction with the PSC. *Rinaldo's, supra* at 77, n 15.

Because the interpretation of this complex transportation contract falls within the special expertise of the PSC, and because there is a need for uniform resolution of the transportation question in issue, we reverse the order of the trial court and refer this matter to the PSC.