MICHIGAN BASIC PROPERTY INSURANCE ASSOCIATION v DETROIT EDISON COMPANY

Docket No. 211293. Submitted November 4, 1999, at Detroit. Decided April 18, 2000, at 9:10 A.M. Leave to appeal denied, 463 Mich __.

Michigan Basic Property Insurance Association and Lloyd's of London, insurers and subrogees of Van Dyke Liquor Market, brought an action in the Wayne Circuit Court against Detroit Edison Company, alleging that the defendant was negligent in designing, installing, inspecting, and maintaining its electrical transmission equipment with respect to an electrical power surge that caused a fire on the insured's premises, resulting in property damage and business interruption. The court, Isidore B. Torres, J., granted summary disposition to the defendant, ruling that under the doctrine of primary jurisdiction it must defer to the Public Service Commission in terms of jurisdiction. The plaintiffs appealed.

The Court of Appeals *held*:

The trial court erred in summarily dismissing the plaintiffs' action. The action does not warrant application of the doctrine of primary jurisdiction.

1. The doctrine of primary jurisdiction is a concept of judicial deference and discretion. It does not preclude civil litigation, but merely suspends court action. A court of general jurisdiction should consider the doctrine whenever there is concurrent original subject-matter jurisdiction regarding a disputed issue both in a court and in an administrative agency. The court should note the extent to which the agency's specialized expertise makes it the preferable forum for resolving the issue, the need for uniform resolution of the issue, and the potential that judicial resolution will have an adverse effect on the agency's performance of its regulatory responsibilities.

2. Causes of action in tort and those causes of action alleging that a utility has violated Public Service Commission tariffs or codes are not cases in which the rationale underlying the doctrine of primary jurisdiction usually applies. The complexities of the regulatory scheme will generally not be implicated where the plaintiff's claim is for personal injury, property damage not covered by

the tariffs, or other tortious activity, because the regulatory scheme is not designed to address these matters.

3. In this case, the plaintiffs' claim does not come under the primary jurisdiction of the Public Service Commission because it does not arise under the tariff that sets out the contractual terms of the defendant's provision of service to its customers, but arises from alleged negligence by the defendant with respect to its duties to maintain and operate electrical equipment and to deliver electricity in a safe and reasonable manner.

4. None of the three considerations supporting an application of the doctrine of primary jurisdiction applies to this case.

Reversed and remanded.

1. COURTS — CONCURRENT JURISDICTION WITH ADMINISTRATIVE AGENCIES — PRIMARY JURISDICTION.

A court of general jurisdiction that shares with an administrative agency concurrent original subject-matter jurisdiction over a dispute may, pursuant to the doctrine of primary jurisdiction, defer to the agency; in deciding whether it should defer to the agency, the court should consider the extent to which the agency's specialized expertise makes it the preferable forum for resolving the issue, the need for uniform resolution of the issue, and the potential that judicial resolution will have an adverse effect on the agency's performance of its regulatory responsibilities.

2. COURTS — CONCURRENT JURISDICTION WITH PUBLIC SERVICE COMMISSION — PRIMARY JURISDICTION.

Causes of action in tort and those causes of action alleging that a utility has violated Public Service Commission tariffs or codes are not cases in which the rationale underlying the doctrine of primary jurisdiction usually applies.

*Vandeveer Garzia* (by *Hal O. Carroll*), and *Jon Shefferly & Associates, P.C.* (by *Jon B. Shefferly* and *Todd E. Briggs*), for the plaintiffs.

*Jack M. Abella* (*O'Leary, O'Leary, Jacobs, Mattson, Perry & Mason, P.C.*, by *John P. Jacobs*, Of Counsel), for the defendant.

Before: TALBOT, P.J., and NEFF and SAAD, JJ.

SAAD, J.

I. NATURE OF THE CASE

Defendant's customer, Van Dyke Liquor Market, suffered property damage due to a fire caused by an electrical power surge. Plaintiffs, Michigan Basic Property Insurance Association and Lloyd's of London, the insurance carriers for Van Dyke Liquor Market, paid their insured for its loss. Plaintiffs then filed this subrogation action against defendant to recover for the property damage. Plaintiffs alleged that defendant's negligent handling of power transmission equipment caused the fire.

In the trial court, defendant asserted the defense of primary jurisdiction and argued that the trial court should defer its jurisdiction to the Michigan Public Service Commission (MPSC). Defendant persuaded the trial court, and attempts to persuade this Court, that under the primary jurisdiction doctrine, if a plaintiff's underlying claim against a utility is covered and regulated by the tariffs promulgated by the MPSC, then the MPSC should be the first forum to adjudicate the claim. Plaintiffs unsuccessfully argued to the trial court, and contends here, that the underlying claim sounds in tort and is therefore not subject to the primary jurisdiction doctrine as expounded in our Supreme Court's decision *Rinaldo's Constr Corp v Michigan Bell Telephone Co*, 454 Mich 65, 70; 559 NW2d 647 (1997).

We agree with plaintiffs' argument that their subrogation claim for fire damage to property caused by a power surge implicates alleged tortious conduct by defendant and, consequently, we hold that the primary jurisdiction doctrine is inapplicable. We therefore reverse the trial court's dismissal and remand for reinstatement of this matter.

## II. FACTS AND PROCEEDINGS

Plaintiffs are casualty insurers for the Van Dyke Liquor Market in Detroit. Michigan Basic Property Insurance Association insured the structure, while Lloyd's of London provided insurance for the contents and for business interruption. In 1994, the market sustained significant damage during a fire, which allegedly was caused by an electrical power surge. Plaintiffs covered the insured's loss and became subrogated to the owner's claims arising from the fire. Plaintiffs brought this action against defendant and alleged that defendant's negligent conduct, specifically negligent design, installation, inspection, and maintenance of power transmission equipment, caused the power surge and fire. Specifically, plaintiffs alleged that Detroit Edison Company breached certain duties that it owed to the insured, and predicated its right to relief on theories of negligence, strict liability, and products liability.[1]

---

[1] Plaintiffs' allegations, in part, are as follows:

8. That by virtue of the statutes of the State of Michigan, applicable rules and regulations of the State of Michigan *including all tariffs, bulletins and other requirements imposed by the Michigan Public Service Commission and pursuant to the common law,* Defendant DETROIT EDISON owed certain duties to Plaintiffs' insured to provide proper and adequate electrical power service and to properly and adequately design, maintain and control its power transmission facilities without negligence and in such manner so as to prevent injury or damage to Plaintiffs' insured's premises. 9. That Defendant DETROIT EDISON owed duties to Plaintiffs' insured to undertake its activities in a careful and prudent manner and to the highest degree since its transmission facilities and equipment were intended to properly control and distribute electricity which is an inherently dangerous commodity if uncontrolled or mishandled. 10. That notwithstanding said duties, Defendant DETROIT EDISON carelessly, recklessly and negligently failed to properly design, install, inspect and maintain its distribution equipment and facilities in

Defendant claimed that primary jurisdiction of plaintiffs' claim rested with the MPSC. The trial court agreed and granted defendant's motion for summary disposition under MCR 2.116(C)(4).

### III. ANALYSIS

This Court reviews decisions on motions for summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Moreover, the applicability of the primary jurisdiction doctrine presents a question of law, which we review de novo on appeal. *Faircloth v Family Independence Agency*, 232 Mich App 391, 401; 591 NW2d 314 (1998). We briefly note, however, that the trial court erroneously stated that it was granting summary disposition under MCR 2.116(C)(4), lack of subject-matter jurisdiction (which we also review de novo). *James v Commercial Carriers, Inc*, 230 Mich App 533, 536; 583 NW2d 913 (1998). The trial court's reference to lack of subject-matter jurisdiction was erroneous because this Court recently held in *Travelers Ins Co v Detroit Edison Co*, 237 Mich App 485; 603 NW2d 317 (1999), that the primary jurisdiction doctrine, which merely "suspends" court action, is not the same as lack of subject-matter jurisdiction, but is "more closely akin to the affirmative defense of the existence of an arbitration agreement." *Id.*, 492-494.

---

such manner and to such extent that said transmission facilities and equipment failed to dissipate and direct a high voltage transient or transmission from Defendant DETROIT EDISON's equipment which resulted in an interior fire and damage to the structure and contents of Van Dyke Liquor Market, Inc. which in turn interrupted the normal business activity of said business contained therein all to its great damage.

Under *Travelers Ins*, summary disposition under the primary jurisdiction doctrine is governed by MCR 2.116(C)(7). Nonetheless, if summary disposition is granted under one subpart of the court rule when it was actually appropriate under another, the defect is not fatal and does not preclude appellate review as long as the record permits review under the correct subpart. *Gibson v Neelis*, 227 Mich App 187, 189; 575 NW2d 313 (1997).

### A. BACKGROUND: THE PRIMARY JURISDICTION DOCTRINE

This appeal turns on the application of the "primary jurisdiction" doctrine, whereby a court defers its own jurisdiction to the jurisdiction of an administrative agency better suited to handle the parties' dispute. *Rinaldo's, supra,* 70. Our Supreme Court has described this doctrine:

> Primary jurisdiction "is a concept of judicial deference and discretion." LeDuc, Michigan Administrative Law, § 10:43, p 70. The doctrine exists as a "recognition of the need for orderly and sensible coordination of the work of. agencies and of courts." *White Lake Improvement Ass'n v City of Whitehall*, 22 Mich App 262, 282; 177 NW2d 473 (1970). In *White Lake*, the Court of Appeals correctly noted that "[t]he doctrine of primary jurisdiction does not preclude civil litigation; it merely suspends court action." *Id.* at 271. Thus, LeDuc notes, "[p]rimary jurisdiction is *not a matter of whether there will be judicial involvement in resolving issues, but rather of when it will occur and where the process will start.*" *Id.* at § 10:44, p 73. A court of general jurisdiction considers the doctrine of primary jurisdiction "whenever there is concurrent original subject matter jurisdiction regarding a disputed issue in both a court and an administrative agency." *Id.* at § 10:43, p 70. [*Rinaldo's, supra*, 70 (emphasis added).]

Under the primary jurisdiction doctrine, a plaintiff seeking relief against a public utility may be required to forestall court action in favor of a hearing before the MPSC when the plaintiff's claim falls within the jurisdiction of the MPSC. *Id.*, 70. The MPSC has complete power to regulate all public utilities and their rates and conditions of service. MCL 460.6; MSA 22.13(6). Its powers to investigate complaints by customers extend to matters anticipated by the regulatory scheme. MCL 460.58; MSA 22.8. Not all disputes between a customer and a public utility are subject to the MPSC's primary jurisdiction. Rather, the "question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Rinaldo's, supra,* 71, quoting *United States v Western P R Co,* 352 US 59, 64; 77 S Ct 161; 1 L Ed 2d 126 (1956).

The Michigan Supreme Court's decision in *Valentine v Michigan Bell Telephone Co,* 388 Mich 19; 199 NW2d 182 (1972), is the seminal Michigan case on the doctrine of primary jurisdiction. The plaintiff, Valentine, alleged that defendant Michigan Bell failed to provide adequate telephone service and sought damages on theories of breach of contract, gross negligence, fraud, and misrepresentation. *Id.*, 21-22. Bell argued that Valentine's action was precluded by the doctrine of primary jurisdiction. The Court summarized the rules for determining when this doctrine applies:

> If a plaintiff's cause of action is based upon a claim that the utility has violated Public Service Commission promulgated tariffs or codes, or if the claim covers some action by the utility outside of the regulations of the Public Service

Commission, a court of general jurisdiction is the proper forum. On the other hand, the code or tariff is part of the contract between the parties and limits of liability therein contained are presumptively valid. Any claim based upon the contractual obligation of the parties is limited to validly promulgated provisions of the tariff or code within the authority of the Public Service Commission. Ordinarily, a party aggrieved by the provisions of a tariff or code should seek relief by an attack upon those provisions before the Public Service Commission and from it to the Ingham County Circuit Court. While the contractual obligations of the parties may be determined by the rules, tariffs and regulations of the Public Service Commission, such is not the case with regard to tortious conduct. *Harbaugh* [*v Citizens Telephone Co*, 190 Mich 421; 157 NW 32 (1916)], *supra*, and *Muskegon Agency* [*Inc v General Telephone Co of Michigan*, 340 Mich 472; 65 NW2d 748 (1954) and 350 Mich 41; 85 NW2d 170 (1957)], *supra*, have clearly established that the proper forum for a claim sounding in tort is a court of general jurisdiction of this state. [*Valentine, supra*, 25-26.]

The Court then examined the plaintiff's complaint and concluded that "[n]o count sets forth *acts or conduct of defendant* that would constitute negligence, gross negligence, fraud, misrepresentation, or some other tort. As for any claim in contract, no violation of the code or tariff is pleaded." *Id.*, 30 (emphasis in original).

Recently, the Michigan Supreme Court elaborated on the law of primary jurisdiction in *Rinaldo's, supra*. There, the plaintiff alleged that Michigan Bell negligently installed and maintained the plaintiff's business telephone service at its new location, "proximately causing a great number of calls from customers and others not to be connected to plaintiff, and resulting in loss of business revenue in excess of $362,000." *Id.*, 68. When the plaintiff sued Michigan Bell, Michigan

Bell maintained that the court should dismiss the action under the doctrine of primary jurisdiction.

The Supreme Court considered the plaintiff's claim in light of the "three major purposes" for the doctrine as discussed by Professors Davis and Pierce:

> First, a court should consider "the extent to which the agency's *specialized expertise* makes it a preferable forum for resolving the issue . . . ." Second, it should consider "the need for *uniform resolution* of the issue . . . ." Third, it should consider "the potential that *judicial resolution of the issue will have an adverse impact on the agency's performance of its regulatory responsibilities.*" Davis & Pierce, 2 Administrative Law (3d ed), § 14.1, p 272. Where applicable, courts of general jurisdiction weigh these considerations and defer to administrative agencies where the case is more appropriately decided before the administrative body. [*Rinaldo's*, 71-72 (emphasis added).]

The Court reviewed its decision in *Valentine*, reiterating "that claims by utility customers proceed in the circuit court where the 'cause of action is based upon a claim that the utility has violated Public Service Commission promulgated tariffs or codes, or if the claim covers some action by the utility outside the regulations of the Public Service Commission . . . .'" *Id.*, 72-73, quoting *Valentine*, *supra*, 25. The Court summarized the rule for applying the doctrine:

> [W]here a plaintiff seeks relief against a telephone company in a court of general jurisdiction, under *Valentine*, the court may entertain (1) a cause of action in tort, or (2) a claim that the telephone company has *violated* the regulatory code or tariffs. Customer claims anticipated by the tariffs and regulations, however, are governed by those tariffs, and relief from the presumptively valid limitations on liability therein must first be sought before the MPSC. [*Rinaldo's*, 73-74.]

> Causes of action in tort and those causes of action alleging that a telephone company has violated the tariffs or code are not cases in which the rationale underlying the doctrine of primary jurisdiction usually apply. The complexities of the regulatory scheme will generally not be implicated where the plaintiff's claim is for personal injury, property damage not covered by the tariffs, or other tortious activity, because the regulatory scheme is not designed to address these matters. Likewise, where the claim is that the defendant has somehow violated the tariffs or code, a court of general jurisdiction will usually be able to decide the legal issues involved in the case. [*Id.*, 75.]

Recalling *Valentine*, the Court distinguished claims sounding in tort and claims alleging *violations* of the tariffs from claims that arose from disputes over rights and duties of the parties as expressed in the tariffs:

> Where the claim asserted is essentially a matter already contemplated by the controlling tariffs, such as a claim for defective telephone equipment or service, and the only issue is the extent to which those tariffs will apply, deferral to the MPSC under the doctrine of primary jurisdiction is proper. The MPSC, charged with the authority to regulate and oversee telephone companies, possesses the degree of expertise with regard to the purpose and effect of the governing tariffs to decide whether the presumptively valid tariff provisions apply to particular facts that do not constitute tortious conduct or a violation of the code or tariff. Thus, the first consideration, the need for agency expertise, weighs in favor of deferral of such matters to the MPSC. [*Id.*, 75-76.]

Elaborating on the tort/contract distinction, the Court stated that if the plaintiff's purported tort claim alleges the violation of duties that "arose solely out of the contractual relationship between the parties and not from any independent legal obligations supporting

a cause of action in tort . . . they are matters incident to the regulation of the telephone company within the primary jurisdiction of the MPSC."[2] *Id.*, 78-79.

In sum, the *Rinaldo's* opinion directs us to consider the nature of the plaintiff's claim (tort/contract; violation of regulatory code or tariffs) in light of the three purposes underlying the primary jurisdiction doctrine. Accordingly, we begin our analysis by considering the nature of plaintiffs' claim. Because *Rinaldo's* emphasizes the distinction between claims arising from the tariffs and claims based on independent duties, a key consideration to this inquiry is the content and provisions of the applicable tariffs. The tariff here provides for service to defendant's customers according to these terms:

> The Company agrees to furnish continuous and adequate service subject to interruption by agreement, or upon advance notice or by accident or other causes not under the reasonable control of the Company, and except where limitations or hours for controlled service are shown in the Schedule of Rates. The Company will not be liable for damages caused by an interruption of service, voltage or frequency variations, single-phase supply to three-phase lines, reversal of phase rotation, or carrier-current frequencies imposed by the Company for system operations or equipment control except such as result from the failure of the Company to exercise reasonable care and skill in furnishing the service. Therefore, the customer should install suitable protective equipment if such occurrences might damage his apparatus.

With these provisions under consideration, we conclude that plaintiffs' claim for damages does *not* arise

---

[2] See also *Dominion Reserves, Inc v Michigan Consolidated Gas Company*, 240 Mich App 216; 610 NW2d 282 (2000).

under this tariff and that it does not come under the MPSC's primary jurisdiction.

Applying the tort/contract distinction, we conclude that plaintiffs' claim sounds in tort rather than in contract. Plaintiffs allege that defendant had a duty to handle electrical power transmission equipment in a safe and reasonable manner and that defendant breached this duty, resulting in a fire that damaged the insured's property. These allegations clearly comport with the elements of the tort of negligence. *McDonald v PKT, Inc*, 233 Mich App 395, 399; 593 NW2d 176 (1999). Furthermore, in the words of the *Rinaldo's* Court, "the complexities of the regulatory scheme will generally not be implicated where the plaintiff's claim is for personal injury, *property damage not covered by the tariffs,* or other tortious activity, *because the regulatory scheme is not designed to address these matters.*" *Id.,* 75 (emphasis added). We agree that plaintiffs' property damage claim is not covered by the tariffs and does not implicate the regulatory scheme.

Citing the language of *Rinaldo's*, defendant argues that any duty defendant owed the insured arose solely from the contract between the insured and defendant and is therefore a matter for the MPSC to decide. Defendant opines that defendant's alleged duty toward the insured existed only because defendant had a contract to supply the insured with electrical power. We reject defendant's but-for interpretation of *Rinaldo's* language on contracts. Defendant's duties to maintain and operate electrical equipment and to deliver electrical power in a safe and reasonable manner do not arise *solely* from the contract. If these duties were strictly a matter of contract,

defendant's duty could never extend beyond the other party to the contract. However, in some circumstances, an electrical utility might be held liable to a noncustomer for electrical injuries. For example, in *Schultz v Consumers Power Co*, 443 Mich 445; 506 NW2d 175 (1993), the plaintiff's decedent was electrocuted by an uninsulated wire positioned too close to his friend's residence. At the time of the electrocution, the decedent was helping his friend perform work on the residence. *Id.*, 447-448. The defendant's duty could not have arisen by any contractual relationship with the decedent because the decedent was not the owner or occupant of the residence. Indeed, the opinion does not tell us if the uninsulated wire was providing power to the residence in question. *Id.* Nonetheless, the Supreme Court rejected the defendant's argument that it had no duty to protect the decedent from the hazards of the uninsulated wire. *Id.*, 453-454. *Schultz* stands in contrast to *Rinaldo's*, wherein Michigan Bell's duty to provide the plaintiff with reliable telephone service did arise solely from the contract.[3] Because our Supreme Court in *Schultz* recognized, at least implicitly, the possibility of a utility's duty of care to a noncustomer, we must reject defendant's contention that defendant's duty here to

---

[3] *Schultz* is also distinguishable from *Hart v Ludwig*, 347 Mich 559; 79 NW2d 895 (1956), the case on which defendant relies. In *Hart*, the defendant agreed in contract to care for the plaintiff's orchard. The defendant failed in this duty, and the orchard suffered. *Id.*, 560. The Supreme Court held that the plaintiff's action against the defendant arose in tort, because the alleged wrongdoing was "simply the violation of a promise to perform the agreement." *Id.*, 565. The Court noted that "[t]he only duty, other than that voluntarily assumed in the contract to which the defendant was subject, was his duty to perform his promise in a careful and skillful manner without risk of harm to others, the violation of which is not alleged." *Id.*

plaintiffs' insured arose *solely* as a result of the contract. Although the electrical service contract between defendant and the insured provided the occasion for defendant to assume the duty, that duty exists in law in the absence of a contract.

Defendant also argues that plaintiffs' claim is governed by the terms of the tariffs and regulatory scheme and that the tariffs bar defendant's liability for plaintiffs' claim. We disagree. Defendant has not cited any provision of the tariff that directs if or when the MPSC will compensate a customer in the event that defendant's failure to properly design, install, inspect, or maintain transmission equipment results in tangible property damage and consequential intangible losses. Defendant cites the following tariff language:

> The Company will not be liable for damages caused by an interruption of service, voltage or frequency variations, single-phase supply to three-phase lines, reversal of phase rotation, or carrier-current frequencies imposed by the Company for system operations or equipment control *except such as result from the failure of the Company to exercise reasonable care and skill in furnishing the service.*

Clearly, this disclaimer of liability does *not* extend to plaintiffs' allegations that defendant was negligent in designing, installing, inspecting, and maintaining its transmission equipment; on the contrary, plaintiffs' allegations fit the disclaimer's exception. Moreover, defendant has not cited any provision of the tariffs that addresses fire prevention, safety standards for power transmission equipment, or any other regulations relevant to plaintiffs' allegations.

Plaintiffs' claim alleges and appears to rest on defendant's tortious conduct and does not warrant application of the MPSC's primary jurisdiction under the three considerations cited by the *Rinaldo's* Court. Nothing in this case implicates the MPSC's unique expertise on the regulatory scheme, customer rates, or rights and obligations under the tariffs. Rather, resolution of this case will involve fact issues on causation, standards of care, negligent conduct, and damages—matters routinely addressed by courts of general jurisdiction.

With respect to the second consideration, we find no special need for uniformity of decisions. Unlike *Rinaldo's*, where "[u]niform results in *applying the tariffs to customer claims* are essential to prevent the telephone company from being exposed to unanticipated liabilities that will hinder its ability to offer affordable telephone service," *id.*, 76 (emphasis added), there is no issue here of how the tariffs apply to plaintiffs' claim.

The third consideration addresses "the potential that judicial resolution of the issue will have an adverse impact on the agency's performance of its regulatory responsibilities." *Id.*, 71, quoting Davis & Pierce, § 14.1, p 272. Because plaintiffs' claim does not implicate the MPSC's regulatory responsibilities, this consideration is not pertinent here. Plaintiffs' case does not present any issue relating to defendant's obligations to customers as governed by the regulatory scheme. The MPSC's regulation of public utilities will not be affected by the outcome of this lawsuit.

Under the facts as alleged, this case properly sounds in tort.[4] Accordingly, the court erred in granting summary disposition, and we reverse and remand. We do not retain jurisdiction.

---

[4] We note that our decision is consistent with decisions from other jurisdictions where the court found that the plaintiffs' claims of damage to dairy cattle from stray voltage did not fall under the primary jurisdiction doctrine. *Public Service Indiana, Inc v Nichols*, 494 NE2d 349 (Ind App, 1986); *Schriner v Pennsylvania Power & Light Co*, 348 Pa Super 177; 501 A2d 1128 (1985).