*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ZARA NORTHOVER,

        Plaintiff-Appellant,

v

WILLIAM BANFIELD, and ROCKET
MORTGAGE LLC, also known as QUICKEN
LOANS LLC,

        Defendants-Appellees.

UNPUBLISHED
May 23, 2025
10:08 AM

No. 365700
Wayne Circuit Court
LC No. 22-010389-CD

Before: GADOLA, C.J., and MURRAY and REDFORD, JJ.

PER CURIAM.

In this employment action, plaintiff, Zara Northover, appeals as of right the trial court order granting summary disposition under MCR 2.116(C)(7) (statute of limitations) and (C)(8) (failure to state a claim) in favor of defendants, William Banfield and Rocket Mortgage (formerly known as Quicken Loans) and dismissing plaintiff's complaint for retaliation. On appeal, plaintiff, acting *in propria persona*, argues the trial court erred by granting summary disposition in favor of defendants because summary disposition was premature, the trial court's reasoning was flawed, and the trial court acted unfairly in favor of defendants. Plaintiff likewise argues that rather than dismissing her complaint, the trial court should have consolidated it with a lawsuit previously filed by plaintiff against Rocket Mortgage. We conclude that plaintiff has identified no error requiring reversal. We affirm the trial court's order and opinion granting summary disposition in favor of defendants.

-1-

# I. BACKGROUND[1]

This appeal stems from plaintiff's complaint against defendants for retaliation. Plaintiff is a Black woman who began working for Rocket Mortgage as a banker in 2014. Plaintiff alleged that she experienced racial harassment, racial discrimination, and retaliation while working at Rocket Mortgage starting in Fall 2020. She filed two lawsuits arising from her employment with Rocket Mortgage.[2]

Plaintiff filed the first lawsuit against Rocket Mortgage on July 9, 2021. In an amended complaint, plaintiff alleged (1) racial discrimination, (2) racial harassment, and (3) retaliation in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 *et seq*. Rocket Mortgage responded to plaintiff's first amended complaint by filing a motion for summary disposition under MCR 2.116(C)(8) on August 9, 2021. The trial court denied this motion on December 10, 2021. Three days after the trial court denied this motion, defendants informed plaintiff that her team was dissolving and offered her a severance package or one of two other positions. She accepted a position on the refinance team.

Plaintiff did not amend her complaint or add Banfield as a defendant in the first lawsuit in response to her transfer to the refinance team. Rather, litigation in the first lawsuit proceeded and the parties completed discovery, which included taking Banfield's deposition in May 2022. After the parties completed discovery, Rocket Mortgage filed a subsequent motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). In response to this motion, plaintiff abandoned her racial discrimination and racial harassment claims. She likewise abandoned the adverse employment actions underpinning her retaliation claim and instead raised four new alleged adverse employment actions, including that Banfield, who was Vice President of the Capital Markets Team, and Rocket Mortgage retaliated against her by dissolving her team and transferring her to the refinance team. Plaintiff alleged this transfer resulted in a $20,000 pay cut and demotion. After a hearing on the parties' arguments, the trial court dismissed plaintiff's claims for racial discrimination and racial harassment on December 14, 2022, and dismissed the

---

[1] This Court previously denied plaintiff's motion to expand the record on appeal. *Northover v Banfield*, unpublished order of the Court of Appeals, entered August 2, 2024 (Docket No. 365700). Although we denied plaintiff's motion, we grant defendants' motion to expand the record on appeal to include the lower court record from plaintiff's first lawsuit against Rocket Mortgage to the extent the motion is necessary. In its order and opinion granting summary disposition, the trial court implicitly took judicial notice of its previous order and opinion granting summary disposition to Rocket Mortgage in the first lawsuit. Relying on the version of the Michigan Rules of Evidence in effect at the time of the proceedings, see ADM File No. 2021-10, 512 Mich lxiii (2023), we note that a court may take judicial notice "at any stage of the proceeding," MRE 201(e), "whether requested or not," MRE 201(c). Moreover, a court may take judicial notice of its own files and records. *Prawdzik v Heidema Bros, Inc*, 352 Mich 102, 112; 89 NW2d 523 (1958).

[2] For clarity, we respectively call the lawsuit filed against Rocket Mortgage "the first lawsuit" and call the lawsuit filed against Rocket Mortgage and Banfield, which is the subject of this appeal, "the second lawsuit."

remaining claim for retaliation on January 10, 2023. Plaintiff did not move for reconsideration or appeal this order.

While the first lawsuit was pending, plaintiff filed a complaint with the Equal Employment Opportunity Commission (the "EEOC") on March 25, 2022, alleging that Rocket Mortgage retaliated against her after the denial of its motion for summary disposition in the first lawsuit by transferring her to a new position and reducing her pay on December 13, 2021. Because the EEOC could not timely investigate her claim, it issued her a notice of right to sue. Plaintiff filed a second lawsuit against Rocket Mortgage and Banfield on August 31, 2022. The second complaint raised one claim of retaliation in violation of Title VII of the Civil Rights Act, 42 USC 2000e *et seq.*; against Rocket Mortgage and one claim of retaliation in violation of the ELCRA against Rocket Mortgage and Banfield.

In plaintiff's count for retaliation under Title VII, plaintiff alleged that she engaged in protected activity by complaining to Rocket Mortgage about unfair treatment of Black employees in 2020 and by lodging a complaint of racial discrimination against a fellow employee at a February 9, 2021 meeting. Plaintiff alleged that Rocket Mortgage knew about this activity and subjected her to adverse employment actions in response. First, plaintiff alleged that Banfield threatened her in a February 10, 2021 meeting held between plaintiff, Banfield, and Team Relations Specialist Vice President Ashley Attaway. Second, plaintiff alleged that Banfield and Attaway sent her an "expectations" e-mail the same day, which negatively reviewed plaintiff. Third, plaintiff alleged that Banfield had his subordinate, Eileen Tu, investigate plaintiff in February 2021. Finally, plaintiff alleged that, after the trial court denied Rocket Mortgage's motion to dismiss her first lawsuit, Banfield and Rocket Mortgage retaliated against her by dissolving her team and transferring her to the refinance team, which resulted in a $20,000 pay cut and demotion. Thereafter, defendants refused to transfer her to a purchase mortgage team. In plaintiff's count for retaliation under the ELCRA, plaintiff alleged that she engaged in protected activity by filing the first lawsuit, that defendants knew about that lawsuit, and defendants subjected her to an adverse employment action by dissolving her position, demoting her, and refusing to transfer her to a purchase mortgage team.

On October 12, 2022, defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(8). The trial court granted this motion in full in an order and opinion that acknowledged the outcome in the first lawsuit. The trial court held that Banfield's "threat," the "expectations" e-mail, and the investigation allegations were time-barred. The trial court acknowledged that plaintiff's final allegation that defendants retaliated against her by transferring her to the refinance team was not time-barred; however, plaintiff failed to show that her reassignment, which was due to the restructuring of the entire Capital Markets Team, was an adverse action. Further, defendants had presented evidence that Rocket Mortgage was dissolving plaintiff's team before the lawsuit was filed and plaintiff chose reassignment over severance. The trial court also held that plaintiff's claim under the ELCRA was barred by her failure to join it to the first lawsuit in accordance with MCR 2.203(A).

This appeal followed.

## II. SUMMARY DISPOSITION

Plaintiff argues that the trial court erred by granting summary disposition in favor of defendants because summary disposition was premature, the trial court's analysis regarding plaintiff's transfer to a new role was flawed, and the trial court exhibited favoritism toward defendants by accepting their statements as evidence. We conclude that summary disposition in favor of defendants was proper and, even if it was improper because it was granted under MCR 2.116(C)(7) and should have been granted under MCR 2.116 (C)(10), any error was harmless. Relief was also proper under the prior judgment principals of res judicata and collateral estoppel.

Because plaintiff failed to present to this Court her arguments regarding the portions of her claims that were time-barred under MCR 2.116(C)(7),[3] the analysis in this appeal is focused on plaintiff's transfer to the refinance team and defendants' refusal to further transfer her to a purchase team. This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

In the order and opinion granting summary disposition in defendants' favor, the trial court stated that it analyzed plaintiff's claims under MCR 2.116(C)(7) and (C)(8). However, its analysis suggests that it considered plaintiff's claims under MCR 2.116(C)(10) rather than (C)(8). The distinction between MCR 2.116(C)(8) and (C)(10) matters because the proofs the trial court may consider differ under each subrule. See *id*. at 159-160.

Although the trial court mislabels its analysis, this Court may still review the trial court's grant of summary disposition under MCR 2.116(C)(10). *Mich Basic Prop Ins Ass'n v Detroit Edison Co*, 240 Mich App 524, 529; 618 NW2d 32 (2000) ("[I]f summary disposition is granted under one subpart of the court rule when it was actually appropriate under another, the defect is not fatal and does not preclude appellate review as long as the record permits review under the correct subpart."). Generally, summary disposition under MCR 2.116(C)(10) is premature when discovery on a disputed issue has not been completed. *Colista v Thomas*, 241 Mich App 529, 537; 616 NW2d 249 (2000). However, summary disposition is appropriate before the close of discovery if there is no reasonable chance that further discovery will result in factual support for the nonmoving party. *Id*. at 537-538.

The trial court granted summary disposition in the second lawsuit on March 27, 2023. Discovery was to conclude sixteen days later on April 12, 2023. The fact that discovery was not completed in the second lawsuit does not preclude summary disposition under MCR 2.116(C)(10) because of the unique posture of the two lawsuits arising out of plaintiff's employment with Rocket Mortgage.

---

[3] Plaintiff raised arguments regarding her time-barred claims for the first time in her appellate reply brief. Reply briefs may contain only rebuttal argument, and raising an issue in a reply brief is not sufficient to properly present an issue for appeal. MCR 7.212(G); *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012). These arguments are not properly before this Court. Therefore, we do not address them.

Plaintiff filed her first lawsuit against Rocket Mortgage for racial harassment, racial discrimination, and retaliation in July 2021. While that case was ongoing, plaintiff was transferred to the refinance team in December 2021. Plaintiff and Rocket Mortgage completed discovery in the first lawsuit after plaintiff was transferred to her new role. This included taking Banfield's and other witnesses' depositions in May 2022, which occurred six months after she was transferred to the refinance team. Those depositions covered the topic of plaintiff's transfer to a new role.[4]

The fact that Banfield was added to the second lawsuit does not support the need for additional discovery. Banfield's alleged conduct was at issue in the first lawsuit. As such, he was deposed in the first lawsuit. As stated, his deposition and other witnesses' deposition covered the topic of plaintiff's transfer to the refinance team. It was plaintiff's choice to file the second lawsuit in August 2022, approximately eight months after she was transferred to the refinance team, instead of moving to amend her pleadings or to add Banfield as a party in the first lawsuit.

Plaintiff asserts that further discovery was necessary because she would have developed testimony that other employees affected by the restructuring of the Capital Markets Team felt shocked by the restructuring and the short amount of time they were given to choose a severance package or a new position. Plaintiff does not explain how this testimony would support her claims. It is no surprise that employees would feel shocked by the departmental restructuring. Such an action would be unsettling personally and professionally to any individual. Their feelings on the matter do not offer any particular insight on the decision to restructure the department. Accordingly, there is no indication that further discovery in the second lawsuit would have resulted in factual support for plaintiff's claims. See *id*. We proceed with our analysis under MCR 2.116(C)(10).

A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *El-Khalil*, 504 Mich at 160 (emphasis omitted). When considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. A court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties. MCR 2.116(G)(5); *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted).

Turning to the merits, this Court has previously recognized that the retaliation provision in the ELCRA, MCL 37.2701(a); mirrors the retaliation provision in Title VII, 42 USC 2000e-3(a). *White v Dep't of Transp*, 334 Mich App 98, 116-117; 964 NW2d 88 (2020). Although this Court is not bound by Title VII caselaw when interpreting the ELCRA, this Court regularly looks to it for guidance. *Id*.

A prima facie case of unlawful retaliation under the ELCRA and Title VII are virtually the same. A plaintiff claiming retaliation under the ELCRA must show: "(1) that the plaintiff engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an

---

[4] In fact, plaintiff cites Banfield's and other witnesses' depositions in her complaint in the second lawsuit to support the factual basis for her claims.

employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Meyer v Center Line*, 242 Mich App 560, 568-569; 619 NW2d 182 (2000). A plaintiff claiming retaliation under Title VII must make the same showing, but the adverse action must be "materially adverse" to plaintiff rather than just "adverse." *Strickland v Detroit*, 995 F3d 495, 510 (CA 6, 2021). Only the third and fourth element are in dispute in this case.

Relevant to the third element, this Court has adopted the "reasonable-employee standard for determining whether an employer has committed a retaliatory adverse employment action under ELCRA," as set forth in *Burlington Northern & Santa Fe R Co v White*, 548 US 53; 126 S Ct 2405; 165 L Ed 2d 345 (2006). *White*, 334 Mich App at 120-121. This is an objective standard. *Id*. at 118-119. An employment decision is retaliatory when it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 118 (quotation marks and citation omitted).

The *White* Court warned that the "decision must be based in the facts of the case, not bright-line or categorical rules as to what actions would deter an employee from objecting to discrimination." *Id*. at 119. As examples, the Court cited hypotheticals from *Burlington*, 548 US at 69:

> A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination. [*White*, 334 Mich App at 119.]

To establish causation under the fourth element, "plaintiff must show that [her] participation in activity protected by the [ELCRA] was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two." *Barrett v Kirtland Community College*, 245 Mich App 306, 315; 628 NW2d 63 (2001) (citation omitted), superseded on other grounds by *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). A temporal relationship between the protected activity and the adverse employment action alone is insufficient to demonstrate a causal connection. *West v Gen Motors Corp*, 469 Mich 177, 185; 665 NW2d 468 (2003) (discussing the retaliation provision of the Whistleblowers' Protection Act, MCL 15.362).

Plaintiff alleged that defendants retaliated against her because the trial court denied a motion for summary disposition filed by Rocket Mortgage in the first lawsuit. Plaintiff alleged that defendants retaliated against her by transferring her to a different department, decreasing her pay by $20,000, and changing her schedule. However, the evidence, viewed in a light most favorable to plaintiff as the nonmoving party, shows that plaintiff was reassigned to a new role because of departmental restructuring. Plaintiff worked in the Capital Markets Team before she was transferred to the refinance team. The Capital Markets Team consisted of over 500 employees organized into smaller teams. Plaintiff worked on one of those teams with less than ten other people. Sometime in the fourth quarter of 2021, executives decided to restructure the entire Capital

Markets Team in response to business trends. Approximately 50 of the 500 employees' positions were dissolved. Separate from this decision, Banfield and other executives had also discussed the effectiveness of plaintiff's team for over a year before ultimately dissolving it.

Some of these employees were only offered severance packages, while others were offered a severance package or to transfer to one of two different roles. Plaintiff and the other employees on her team were offered the choice between severance or one of two other roles. Plaintiff chose to join the refinance team, a position with a base salary of approximately $62,000 and additional compensation from commissions. Plaintiff has failed to present evidence that her decision to choose the position in the refinance team was a demotion. Rather, the evidence supports that her transfer was akin to a lateral transfer. Moreover, no evidence supports that plaintiff was offered lesser positions than her fellow employees. In fact, she and her team were offered the choice of severance or a new position when other employees in the Capital Markets Team only received a severance offer.

Additionally, defendants' refusal to transfer her from the refinance team to a purchase mortgage team is not an adverse employment action because plaintiff is not entitled to her preferred role. Plaintiff did not allege or produce factual support that a subsequent transfer to the purchase mortgage team would provide her with additional material benefits, employment prospects, or prestige. Given the larger context of plaintiff's transfer to the refinance team as part of a departmental restructuring, a reasonable worker in plaintiff's position would not be dissuaded from making or supporting a charge of discrimination.

Plaintiff also failed to show a causal nexus between her protected activity and the alleged adverse employment action. Plaintiff succeeded against Rocket Mortgage's motion for summary disposition in the first lawsuit on December 10, 2021. Three days later, defendants informed plaintiff that she had the choice of taking a severance package or accepting one of two new positions. This close temporal proximity alone is insufficient. See *id*. The evidence supports that the decision to restructure the Capital Markets Team was made before the motion for summary disposition was decided. As explained, Banfield and other executives had been discussing the effectiveness of plaintiff's team for over a year before dissolving it. Likewise, the ultimate dissolution of her team was part of the dissolution of 50 positions across the Capital Markets Team, which was made sometime in the fourth quarter of 2021. Plaintiff has offered no evidence that her protected activity was a factor, let alone a significant factor, in the decision to restructure the entire Capital Markets Team. See *Barrett*, 245 Mich App at 315.

Plaintiff argues that the trial court exhibited favoritism toward defendants by accepting these facts as true. Plaintiff cites no supporting legal authority to support this claim on appeal. An appellant may not announce her position and leave it to this Court to discover and rationalize a basis for her claims, nor may she give issues cursory treatment with little to no citation of supporting authority. *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003). This issue is abandoned. Even if it were not, it is without merit. An unfavorable disposition formed on the basis of the facts developed in the proceeding may not be characterized as bias or prejudice "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Cain v Mich Dep't of Corrections*, 451 Mich 470, 496; 548 NW2d 210 (1996) (quotation marks and citation omitted; emphasis omitted). In this case, the trial court merely relied on facts developed in the depositions in the first lawsuit to grant summary disposition

in favor of Rocket Mortgage. Rocket Mortgage had met its burden of identifying the issues about which there was no genuine issue of material fact with supporting evidence. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369-370; 775 NW2d 618 (2009). As the nonmoving party in that motion for summary disposition, plaintiff was required to present evidence that demonstrated a factual dispute remained that must be resolved by a finder of fact. See *id*. at 370. She failed to do this and failed to move for reconsideration or appeal the trial court's order in the first lawsuit. Summary disposition in favor of defendants was proper.

To the extent the trial court's decision to grant summary disposition under MCR 2.116(C)(10) could be considered error, it was harmless. See MCR 2.613(A) (describing the harmless-error rule in civil cases); *Ellison v Dep't of State*, 320 Mich App 169, 179; 906 NW2d 221 (2017) ("The trial court's error is harmless if it is not decisive to the case's outcome."). Summary disposition would have also been proper under MCR 2.116(C)(7) because of the prior final judgment in the first lawsuit.[5]

Res judicata prevents the litigation of the same cause of action in multiple suits. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 418; 733 NW2d 755 (2007). Res judicata applies "when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id*. (quotation marks and citation omitted). This Court broadly applies the doctrine to "not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id*. (quotation marks and citation omitted).

Issues decided through the grant of summary disposition are decided on the merits. *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, 346 Mich App 197, 204; 12 NW3d 20 (2023). The first lawsuit was dismissed under MCR 2.116(C)(10) after the parties conducted discovery. Plaintiff did not move for reconsideration or appeal that order. Subsequently, the time for filing an appeal has passed. See MCR 7.104. Accordingly, the first lawsuit was decided on the merits.

There is no dispute that plaintiff and Rocket Mortgage were parties in the first lawsuit. Although Banfield was not a party in the prior litigation, he was in privity with Rocket Mortgage:

> To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert. The outer limit of the doctrine traditionally requires both a substantial identity of

---

[5] We acknowledge the trial court did not decide that plaintiff's complaint was barred by a prior judgment under MCR 2.116(C)(7); however, the trial court similarly held that plaintiff's claim under the ELCRA was barred because she could not "split her cause of action." This referred to plaintiff's failure to comply with the compulsory joinder requirement in MCR 2.203(A). The principles underlying res judicata are applicable when determining if two claims arise out of the same transaction or occurrence for purposes of MCR 2.203(A). *Garrett v Washington*, 314 Mich App 436, 451; 886 NW2d 762 (2016).

interests and a working functional relationship in which the interests of the nonparty are presented and protected by the party in the litigation. *Adair v Michigan*, 470 Mich 105, 122, 680 NW2d 386 (2004) (quotation marks and citation omitted).

Parties in privity include "principal to an agent, a master to a servant, or an indemnitor to an indemnitee." *Peterson Novelties, Inc v Berkley*, 259 Mich App 1, 13; 672 NW2d 351 (2003).

Banfield and Rocket Mortgage shared the same interest in the first lawsuit. For purposes of the ELCRA, an "employer" is defined to include its agents. See MCL 37.2201(a).[6] Banfield was named in the first lawsuit as the individual responsible for several of the alleged adverse employment actions Rocket Mortgage committed against plaintiff, such as the "threat" in the February 10 meeting and the "expectations" e-mail. Plaintiff's addition of Banfield to the second lawsuit supports that Banfield was in privity with Rocket Mortgage in the first lawsuit. Plaintiff raised many of the same factual allegations in the second lawsuit, including those alleged to be committed by Banfield. When Banfield was sued in the second lawsuit, he was sued only in his capacity as an "employer," for conduct he committed as an agent of Rocket Mortgage. With reasonable diligence, Banfield could have been sued when the first lawsuit was initiated. Moreover, plaintiff could have moved to amend her complaint to add Banfield as a defendant when plaintiff was transferred to the refinance team in December 2021. Banfield was in privity with Rocket Mortgage in the first lawsuit.

Finally, the matter in the second lawsuit was or could have been resolved in the first lawsuit because they arose from the same operative facts. Michigan courts apply a "transactional test" to determine whether a claim could have been resolved in a prior action. *Garrett*, 314 Mich App at 442. The transactional test pragmatically asks " 'whether the facts are related in time, space, origin or motivation, [and] whether they form a convenient trial unit . . . .' " *Adair*, 470 Mich at 125 (emphasis omitted), quoting 46 Am Jur 2d, Judgments, § 533, p 801. "If the same facts or evidence would sustain both, the two actions are the same for the purpose of res judicata." *C-Spine Orthopedics, PLLC*, 346 Mich App at 203 (quotation marks and citation omitted).

In the first lawsuit, plaintiff alleged that Rocket Mortgage retaliated against her in violation of the ELCRA because of her opposition to racial discrimination in the workplace. She alleged that Rocket Mortgage engaged in a course of adverse employment actions over several years. While the first lawsuit was ongoing, plaintiff was transferred to the refinance team in December 2021. Plaintiff did not move to amend her complaint to include her transfer as an adverse employment action; however, she relied on it in her brief in response to defendant's motion for summary disposition in the first lawsuit. Plaintiff abandoned the original adverse actions she alleged and defended against the motion by asserting that Banfield's threat in the February 10 meeting, the "expectations" e-mail, Weeks' failure to investigate Banfield or Attaway for the February 10th meeting, and her transfer to the refinance team at lesser pay and different hours were all adverse employment actions committed against her for her protected activities. The trial

---

[6] Title VII was not intended to impose individual liability on employees. *Wathen v Gen Electric*, 115 F3d 400, 406 (CA 6, 1997).

court expressly addressed and rejected each of these arguments when it granted summary disposition in Rocket Mortgage's favor.

It would have been logical for plaintiff to amend her complaint in the first lawsuit to include her claims for retaliation under both Title VII and the ELCRA for her transfer to the refinance team and defendants' refusal to transfer her to her preferred team. Instead, plaintiff waited months and brought the second lawsuit against Rocket Mortgage and Banfield. She relied on the same alleged facts from the first lawsuit to form her two claims of retaliation. Plaintiff herself alleged in the complaint in the second lawsuit that her transfer was part of Rocket Mortgage's ongoing retaliation against plaintiff for her opposition to racial discrimination in the workplace. Pragmatically, the facts necessary for the second action are related in time, space, origin, and motivation to the facts in the prior action. See *Adair*, 470 Mich at 125. Moreover, they would have formed a convenient unit for trial. See *id*. Plaintiff, exercising reasonable diligence, could have raised her claims of retaliation in the first lawsuit. Plaintiff's claims are barred by res judicata.

Likewise, the specific factual issue of whether defendants retaliated against her by transferring her to the refinance team was barred by collateral estoppel. Collateral estoppel is similar to res judicata; however, collateral estoppel focuses on the preclusion of a specific issue rather than an entire claim. *Mecosta Co Med Ctr v Metro Group Prop and Cas Ins Co*, 509 Mich 276, 282-283; 983 NW2d 401 (2022). Collateral estoppel is "designed to avoid relitigation of claims, and to prevent vexation, confusion, chaos and the inefficient use of judicial resources." *Bd of Co Rd Comm'rs for Co of Eaton v Schultz*, 205 Mich App 371, 377; 521 NW2d 847 (1994). The elements of collateral estoppel are:

> (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment, (2) the parties or privies must have had a full [and fair] opportunity to litigate the issue, and (3) there must be mutuality of estoppel. [*Mecosta Co Med Ctr*, 509 Mich at 283 (quotation marks and citation omitted; alteration in original).][7]

As previously stated, the first lawsuit involved the same parties or privies as the parties in this case and the first lawsuit was decided on its merits. Likewise, the first lawsuit involved the same question of fact as this case. In the second lawsuit, plaintiff raised the issue of whether defendants retaliated against her by transferring her to the refinance team. However, this specific issue was resolved in the first lawsuit after a full and fair opportunity for both parties to address the issue. In the first lawsuit, plaintiff defended against Rocket Mortgage's motion for summary disposition by arguing that it retaliated against her by transferring her to the refinance team. The trial court expressly rejected this argument in its order and opinion dismissing the first lawsuit under MCR 2.116(C)(10) Accordingly, the specific issue of plaintiff's transfer to the refinance team was barred by collateral estoppel.

---

[7] Mutuality of estoppel is not required in this case. When "collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required. *Monat v State Farm Ins Co*, 469 Mich 679, 695; 677 NW2d 843 (2004).

In sum, the trial court did not err by granting summary disposition in favor of defendants. Further, the claims raised in the second litigation were barred. Plaintiff is not entitled to relief.

## III.  CONSOLIDATION

Finally, plaintiff argues that rather than dismissing her second lawsuit, the appropriate remedy was to consolidate it with the first lawsuit because dismissal would result in inconsistent rulings.  We disagree.

The decision to consolidate cases rests in the sound discretion of the trial court.  *Bordeaux v Celotex Corp*, 203 Mich App 158, 163; 511 NW2d 899 (1993).  A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes.  *Nowacki v Dep't of Corrections*, 319 Mich App 144, 148; 900 NW2d 154 (2017).  This Court reviews de novo the interpretation and application of court rules.  *Wolfenbarger v Wright*, 336 Mich App 1, 28; 969 NW2d 518 (2021).

A trial court may consolidate two cases "[w]hen actions involving a substantial and controlling common question of law or fact are pending before the court . . . ."  MCR 2.505(A). At the time the trial court granted summary disposition in the second lawsuit, it had already granted summary disposition in the first lawsuit and dismissed that case.  There was no case pending before the court with which the second lawsuit could be consolidated.  Further, plaintiff's claim that the failure to consolidate the two lawsuits would result in inconsistent rulings is meritless.  The first lawsuit was dismissed on the merits, including plaintiff's assertion that Rocket Mortgage retaliated against her by transferring her to the refinance team.  She did not seek reconsideration or appeal that order.  Consequently, the trial court did not issue inconsistent rulings by dismissing the second lawsuit.  Plaintiff's assertion that the trial court should have consolidated the two lawsuits is without merit.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ James Robert Redford