Per Curiam.
 

 Defendant, Detroit Edison Company, appeals by leave granted the trial court’s order denying its motion for summary disposition. We reverse and remand.
 

 I. FACTS AND PROCEDURAL HISTORY
 

 Detroit Edison, a public utility regulated by the Michigan Public Service Commission (mpsc), supplies electric current to numerous customers throughout Michigan, including those in Wayne County, where plaintiff Durcon Company’s plant is located. Detroit Edison agreed to supply electric current for lighting and power purposes in a 240-volt capacity to Durcon’s Plymouth Township plant. Durcon alleges that, on March 1, 1996, it experienced high voltage at the plant that caused damage to its heating, ventilating, and air-conditioning system and a machine saw. After this incident, Durcon monitored the voltage and
 
 *555
 
 found that there were frequent spikes that exceeded allowable deviations.
 

 On February 25, 1999, Durcon filed a complaint against Detroit Edison in the Wayne Circuit Court. In its complaint, Durcon alleged the following: breach of contract; negligence per se based on violation of the Michigan Administrative Code Standards of Quality of Services by supplying voltage in excess of five percent above the standard normal voltage; negligence per se based on violation of the Rate Book for Electric Service, Tariff 9, Rule B-3.2, by failing to exercise reasonable care and skill in furnishing electricity; general negligence based on breach of duty to protect against foreseeable harm and duty to make reasonable inspections of electrical apparatus in accordance with Michigan case law; breach of implied warranty of fitness and merchantability; and fraud.
 

 On April 1, 1999, Detroit Edison filed a motion for summary disposition in the trial court pursuant to MCR 2.116(C)(4) and argued that primary jurisdiction for the case rests with the mpsc. The trial court denied Detroit Edison’s motion and Detroit Edison filed an application for leave to appeal the trial court’s order. This Court granted leave to appeal on October 25, 1999.
 

 H ANALYSIS
 

 Detroit Edison argues that the circuit court erred in denying its motion for summary disposition because Durcon’s claims, though couched in tort theories, in fact arise solely out of its claim of breach of contract and therefore the mpsc has primary jurisdiction over the case.
 

 
 *556
 
 This Court reviews decisions on motions for summary disposition de novo.
 
 Spiek v Dep’t of Transportation,
 
 456 Mich 331, 337; 572 NW2d 201 (1998). Moreover, we review jurisdictional questions under MCR 2.116(C)(4) de novo as questions of law.
 
 Travelers Ins Co v Detroit Edison Co,
 
 465 Mich 185, 205; 631 NW2d 733 (2001). As our Supreme Court noted in
 
 Travelers,
 
 a motion under MCR 2.116(C)(4) (lack of subject-matter jurisdiction) is inappropriate in this case “because invocation of primary jurisdiction is not the equivalent of summary disposition as the latter represents a final disposition of a claim while the former merely defers a claim to an administrative agency.”
 
 Travelers, supra
 
 at 205-206, n 18. Nonetheless, as in
 
 Travelers,
 
 the motion “affects neither the standard of review that we apply in reviewing the circuit court, nor the analysis of its substantive decision.”
 
 Id.
 

 This case involves the application of the primary jurisdiction doctrine “whereby a court defers its own jurisdiction to the jurisdiction of an administrative agency better suited to handle the parties’ dispute.”
 
 Michigan Basic Property Ins Ass’n v Detroit Edison Co,
 
 240 Mich App 524, 529; 618 NW2d 32 (2000). The doctrine “ ‘arises when a claim may be cognizable in a court but initial resolution of issues within the special competence of an administrative agency is required.’ ”
 
 Travelers, supra
 
 at 197, quoting
 
 Dist of Columbia v Thompson, 570 A2d
 
 277, 288 (DC App, 1990), vacated in part 593 A2d 621 (DC App, 1991). As our Supreme Court explained in
 
 Rinaldo’s Constr Corp v Michigan Bell Telephone Co,
 
 454 Mich 65, 70; 559 NW2d 647 (1997):
 

 
 *557
 
 Primary jurisdiction “is a concept of judicial deference and discretion.” LeDuc, Michigan Administrative Law, § 10:43, p 70. The doctrine exists as a "recognition of the need for orderly and sensible coordination of the work of agencies and of courts.”
 
 White Lake Improvement Ass’n v City of Whitehall,
 
 22 Mich App 262, 282; 177 NW2d 473 (1970). In
 
 White Lake,
 
 the Court of Appeals correctly noted that “[t]he doctrine of primary jurisdiction does not preclude civil litigation; it merely suspends court action.”
 
 Id.
 
 at 271. Thus, LeDuc notes, “[p]rimary jurisdiction is not a matter of whether there will be judicial involvement in resolving issues, but rather of when it will occur and where the process will start.”
 
 Id.
 
 at § 10:44, p 73. A court of general jurisdiction considers the doctrine of primary jurisdiction “whenever there is concurrent original subject matter jurisdiction regarding a disputed issue in both a court and an administrative agency.”
 
 Id.,
 
 § 10:43 at 70. .
 

 As our Supreme Court further stated in
 
 Attorney General v Diamond Mortgage Co,
 
 414 Mich 603, 612-613; 327 NW2d 805 (1982):
 

 “[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined.” [Quoting
 
 Far East Conference v United States,
 
 342 US 570, 574; 72 S Ct 492; 96 L Ed 2d 576 (1952).]
 

 To that end, “whether judicial review will be postponed in favor of the primary jurisdiction of an administrative agency ‘necessarily depends upon the agency rule at issue and the nature of the declaration being sought in the particular case.’ ”
 
 Travelers, supra
 
 at 198, quoting Baron,
 
 Judicial review of administrative agency rules: A question of timing,
 
 43 Baylor
 
 *558
 
 L R 139, 159 (1991). Further, quoting from Davis & Pierce, 2 Administrative Law (3d ed), § 14.1, p 272, the Supreme Court in
 
 Rinaldo’s, supra
 
 at 71-72, articulated the following factors to determine whether court action should be suspended for agency review:
 

 First, a court should consider “the extent to which the agency’s specialized expertise makes it a preferable forum for resolving the issue ....” Second, it should consider “the need for uniform resolution of the issue . . . .” Third, it should consider “the potential that judicial resolution of the issue will have an adverse impact on the agency’s performance of its regulatory responsibilities.” Where applicable, courts of general jurisdiction weigh these considerations and defer to administrative agencies where the case is more appropriately decided before the administrative body.
 

 Accordingly, “the
 
 Rinaldo’s
 
 opinion directs us to consider the nature of the plaintiffs claim (tort/contract; violation of regulatory code or tariffs) in light of the three purposes underlying the primary jurisdiction doctrine.”
 
 Michigan Basic, supra
 
 at 534.
 

 Here, Detroit Edison argues that all of Durcon’s claims arise out of its contractual relationship with Detroit Edison and that they require the specialized expertise of the mpsc. Conversely, Durcon argues that its claims are based on tort and involve quantifiable property damage and do not require the expertise of the mpsc.
 

 In count I, Durcon asserts a claim of breach of contract for supplying electrical power in greater voltages than agreed on by the parties. The MPSC clearly has the authority and expertise to hear this breach of contract claim.
 
 Travelers, supra
 
 at 202, n 17, citing
 
 Dominion Reserves, Inc v Michigan Consolidated
 
 
 *559
 

 Gas Co,
 
 240 Mich App 216, 221; 610 NW2d 282 (2000). Further, in count v, Durcon alleges that Detroit Edison breached an implied warranty of fitness and merchantability, which claim is also contractual in nature and appropriately addressed by the mpsc.
 

 In count n, Durcon claims that Detroit Edison is liable for negligence per se for violating the Michigan Administrative Code Standards of Quality Services, and, in count in, Durcon alleges Detroit Edison is liable for negligence per se for violating Rule B-3.2 of the Rate Book for Electric Service.
 
 [1]
 
 Generally, if a plaintiff seeks relief in a court of general jurisdiction, “the court may entertain (1) a cause of action in tort or (2) a claim that the . . . company has violated the regulatory code or tariffs.”
 
 Rinaldo’s, supra
 
 at 73. However, as the
 
 Rinaldo’s
 
 Court emphasized, “the jurisdictional question is not to be resolved by mere allegation, but rather by analysis of whether the facts pled give rise to a legal duty in tort independent of breach of contract.”
 
 Id.
 
 at 82. If a plaintiff claims a
 
 *560
 
 breach of duty that “arose solely out of the contractual relationship between the parties and not from any independent legal obligations supporting a cause of action in tort,” primary jurisdiction rests with the MPSC.
 
 Id.
 
 at 78-79. Moreover, “[c]ustomer claims anticipated by the tariffs and regulations . . . are governed by those tariffs, and relief from the presumptively valid limitations on liability therein must first be sought before the mpsc.”
 
 Id.
 
 at 73-74.
 
 [2]
 

 The primary difficulty in this case is that, on its face, Durcon’s count m allegation that Detroit Edison violated Rule B-3.2 by “failing to exercise reasonable care and skill in furnishing the service” seems to fall squarely under the circuit court’s jurisdiction, except that the tariff specifically limits Detroit Edison’s liability for damages caused by voltage or frequency variations. Moreover, while the claim is framed as one in negligence that, as a tort, would normally bypass MPSC review, claims for damages caused by frequency variations is specifically anticipated by the tariff, and the extent of liability for frequency fluctuations is governed by the tariff. Further, Durcon’s allegation that Detroit Edison owed a duty to regularly inspect its transformers and to monitor voltage rates appears to refer to duties that “arose solely out of the contractual relationship between the parties and not from any independent legal obligations supporting a cause of action in tort.”
 
 Rinaldo’s, supra
 
 at 78-79.
 

 
 *561
 
 Until a factual determination is made regarding the cause of the frequency variation, it is impossible to say whether Detroit Edison’s liability is controlled by the “presumptively valid limitations on liability” for frequency variations under the rule, or whether it may be hable for damages in negligence. For now, however, we must presume that the limitations on liability for frequency spikes under Rule B-3.2 are valid and relief therefrom must first be sought in the mpsc.
 
 Rinaldo’s, supra
 
 at 74.
 

 Though this is a close issue, we do not believe that Durcon may circumvent MPSC review by merely alleging tort claims to avoid MPSC jurisdiction, particularly when the nature of the claims and the limits of liability are contemplated in the tariff.
 
 [3]
 
 The MPSC, as the agency created to regulate the subject matter, cannot be passed over by creative pleading, nor should the trial court interfere with the mpsc’s regulatory powers in addressing matters that are, at least arguably, anticipated and governed by the tariff.
 
 Id.
 

 Further, we believe that, given the highly technical issues involved in determining the cause of the spikes and the nature and extent of liability under the tariff and the Quality of Service rules, the mpsc’s “ ‘specialized expertise makes it a preferable forum for resolving the issue ....’”
 
 Rinaldo’s, supra
 
 at 71, quoting
 
 *562
 
 Davis & Pierce,
 
 supra.
 
 In both counts n and in, Durcon raises “ ‘issues of fact not within the conventional experience of judges’ ” and those “ ‘requiring the exercise of administrative discretion.’ ”
 
 Diamond Mortgage, supra
 
 at 612, quoting
 
 Far East Conference, supra.
 
 Further, while Durcon correctly points out that its claim is for property damage, which is normally within the trial court’s jurisdiction, here, the property damage at issue is also anticipated and “covered by” the tariff, which, again, brings it within the mpsc’s expertise.
 
 Rinaldo’s, supra
 
 at 73-74.
 

 Here, as in
 
 Rinaldo’s,
 
 “[u]niform results in applying the tariffs to customer claims are essential to prevent the [electric] company from being exposed to unanticipated liabilities that will hinder its ability to offer affordable [electrical] service.”
 
 Rinaldo’s, supra
 
 at 76. In other words, MPSC review is preferable over judicial review for consistent application of the tariffs between the utility and its commercial customers under similar facts. Moreover, applying the third consideration cited in
 
 Rinaldo’s,
 

 if courts were to afford remedies separate from those provided in the tariffs, despite the fact that the tariffs contemplated claims of that nature when they were approved, such remedies could frustrate not only the uniform application of the regulatory scheme but also the agency’s ability to perform its regulatory responsibilities.
 
 [Id,.]
 

 Because the primary issues raised by Durcon are anticipated and appear to be governed by the tariff, initial review by the mpsc is essential to allow the agency to exercise its regulatory function and to ensure consistent results for similar claims. It appears that judicial resolution of this claim would “ ‘have an adverse impact on the agency’s performance of its
 
 *563
 
 regulatory responsibilities.’ ”
 
 Id.
 
 at 71, quoting Davis & Pierce,
 
 supra.
 
 Because the extent of Detroit Edison’s liability is specifically contemplated by the tariff, taking it outside the jurisdiction of the MPSC would interfere with that agency’s complete power and jurisdiction to regulate all public utilities in the state including all services, rules, and conditions of service, as well as “the power and jurisdiction to hear and pass upon all matters pertaining to, necessary, or incident to the regulation of all public utilities . . . .” MCL 460.6.
 

 As this case makes clear, what is required in cases raising various claims related to public utility service is a “ ‘recognition of the need for orderly and sensible coordination of the work of agency and of courts.’ ”
 
 Rinaldo’s, supra
 
 at 70, quoting
 
 White Lake, supra
 
 at 282. This end will be best served by first deferring jurisdiction to the MPSC. We recognize that Durcon has also asserted claims of general negligence and fraud, over which the circuit court arguably has jurisdiction. However, because these claims arise out of the same facts and circumstances giving rise to Durcon’s other claims which, in turn, appear to be governed by the tariff and the contractual relationship of the parties, initial review by the mpsc is appropriate.
 

 It is well settled that civil litigation is not precluded by deferring jurisdiction to the MPSC; rather, it is merely suspended.
 
 Rinaldo’s, supra
 
 at 70. Once the MPSC has decided Durcon’s contract claims and those governed by the tariff, certain claims may remain that Durcon may pursue in the circuit court. However, given that this case involves numerous, complex claims and issues of fact, we hold that it requires the expertise of the mpsc to decide the extent to which
 
 *564
 
 Durcon’s allegations implicate and are governed by the regulatory code and tariff rules.
 
 [4]
 

 Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
 

 [1]
 

 Durcon alleges a violation of the Rate Book for Electric Service, which was approved and formally promulgated by the mpsc as Tariff 9. Specifically, Durcon claims Detroit Edison violated Rule B-3.2, which provides, in pertinent part:
 

 The Company agrees to furnish continuous and adequate service subject to interruption by agreement, or upon advance notice or by accident or other causes not under the reasonable control of the Company, and except where limitations or hours for controlled service are shown in the Schedule of Rates. The Company will not be liable for damages caused by an interruption of service, voltage or frequency variations, single-phase supply to three-phase lines, reversal of phase rotation, or carrier-current frequencies imposed by the Company for system operations or equipment control except such as result from the failure of the Company to exercise reasonable care and skill in furnishing the service. Therefore, the customer should install suitable protective equipment if such occurrences might damage his apparatus. [Tariff 9, Rule B-3.2.]
 

 [2]
 

 As our Supreme Court recently reiterated, “[w]Me Michigan case law has unequivocally held that claims sounding in tort against public utilities are properly brought before the circuit courts, these holdings do not, expressly or by implication, preclude exercise by the mpsc of jurisdiction over those claims that have traditionally fallen within its authority.”
 
 Travelers, supra
 
 at 202.
 

 [3]
 

 As discussed above, Michigan case law attempts a distinction between cases in which a plaintiff alleges a violation of a tariff, which may be decided in the circuit court, and those cases alleging a claim the tariff contemplates or for which it limits liability.
 
 Rinaldo’s, supra
 
 at 73-74. In our view, when a lawsuit stems exclusively from a power surge, which is a service matter within the mpsc’s regulatory power and is a liability matter addressed directly in the governing tariff, this is precisely an issue on which the mpsc has expertise and for which its review powers should be applied.
 

 [4]
 

 We also note that postponing judicial review for the mpsc’s primary jurisdiction will not prejudice Durcon, particularly because both parties anticipated this eventuality and, indeed, Durcon filed concurrent claims with the mpsc and the circuit court in anticipation of a later ruling on which tribunal has primary jurisdiction.