# STATE OF MICHIGAN

# COURT OF APPEALS

LAKE BLUFF MOTEL, INC.,

        Plaintiff-Appellee,

v

SOUTH HAVEN CHARTER TOWNSHIP,

        Defendant-Appellant,

UNPUBLISHED
November 19, 2015

No.   323766
Van Buren Circuit Court
LC No.   13-630788-CZ

Before:  TALBOT, C.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Defendant, South Haven Charter Township, appeals as of right the trial court's order granting partial summary disposition in favor of plaintiff and directing defendant to pay plaintiff $25,640.00 as a refund for overcharges of water and sewer debt service charges paid by plaintiff to defendant on or after February 11, 2008 through September 2013.  We affirm in part, reverse in part, and remand for entry of partial summary disposition in defendant's favor limited to the retroactive adjustment periods set forth in Ordinance 41 and for further action not inconsistent with this opinion.

Facts

Defendant, pursuant to a December 1994 franchise and water and sewer agreement, is a member of the South Haven/Casco Township Sewer and Water Authority ("the Authority"), a public body that provides water and sewer services to properties located in defendant township, the City of South Haven ("the City"), and Casco Township.  Plaintiff is a business in South Haven Township that utilizes the services provided by the Authority.  The franchise agreement provides a formula to estimate the amounts to bill for water to its non-metered customers, such as plaintiff: 250 gallons per day per Residential Equivalent User (REU) and provides a schedule of standard REU's to assign to various specific businesses.  The franchise agreement requires defendant to adopt ordinances to provide the services, and to utilize the City to provide billing services for it to "pay a collection fee of two percent (2%) of the added debt retirement charge for added billing and handling costs" to the City.

Consistent with the franchise agreement, defendant adopted a water and wastewater ordinance (Ordinance 41) in June 1995 so it could provide those services to homes and businesses in its township.  The ordinance details the elements that make up water and sewer

-1-

rates, one of which is a "capital" or debt service charge at issue in the present case. According to plaintiff, the water and sewer debt amounts defendant charged it were incorrectly calculated and resulted in plaintiff being overcharged from July 1999 to August 2013. Plaintiff thus initiated the instant action seeking a refund of the alleged overpayments, asserting that defendant was unjustly enriched by retaining the overpayments.[1]

In lieu of answering the complaint, defendant sought summary disposition pursuant to MCR 2.116(C)(7), (8) and (10) under a multitude of theories. The trial court granted defendant's motion, in part, based only upon the statute of limitations and defendant's claim that there were no genuine issues of material fact and denied the vast majority of defendant's bases for summary disposition in its favor. Thereafter, the trial court entered an order granting partial summary disposition in favor of plaintiff pursuant to MCR 2.116(I)(2), "to the extent of water and sewer debt service charges due and paid by Plaintiff to Defendant on or after February 11, 2008 through September 2013. The order directed defendant to pay plaintiff $25,640.00. This appeal followed.

## I. Administrative Remedies

Defendant first asserts that the trial court erred in failing to dismiss plaintiff's claim when plaintiff did not exhaust its administrative remedies. We disagree.

Although defendant only moved for summary disposition under MCR 2.116(C)(7), (8) and (10), its claim in this regard is essentially that the trial court lacked subject matter jurisdiction, which falls under MCR 2.116(C)(4). We review de novo jurisdictional questions under MCR 2.116(C)(4), *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 205; 631 NW2d 733 (2001), and, in doing so, we determine whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence, demonstrate a lack of subject matter jurisdiction. *L & L Wine & Liquor Corp v Liquor Control Com'n*, 274 Mich App 354, 356; 733 NW2d 107 (2007). "Summary disposition for lack of jurisdiction under MCR 2.116(C)(4) is proper when a plaintiff has failed to exhaust its administrative remedies." *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 50; 620 NW2d 546 (2000).

To the extent the trial court premised its ruling on this issue on MCR 2.116(C)(10), we review decisions on motions for summary disposition de novo. *Durcon Co v Detroit Edison Co*, 250 Mich App 553, 556; 655 NW2d 304 (2002). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." When reviewing a motion brought under subrule (C)(10), this Court must examine the documentary evidence presented to the trial court and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists to warrant a trial. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

---

[1] Plaintiff also asserted a negligence claim against defendant that it voluntarily dismissed.

Because ordinances are treated as statutes for purposes of interpretation and review, we also review de novo the interpretation and application of a municipal ordinance. *Bonner v City of Brighton*, 495 Mich 209, 221-222; 848 NW2d 380 (2014).

"The doctrine of exhaustion of administrative remedies requires that where a remedy before an administrative agency is provided, relief must be sought by exhausting this remedy before the courts will act." *Compton Sand & Gravel Co v Dryden Tp*, 125 Mich App 383, 397; 336 NW2d 810 (1983), quoting 2 Am Jur 2d, Administrative Law, § 595, p. 426. The requirement that administrative remedies be exhausted prior to seeking judicial review serves several purposes:

> (1) an untimely resort to the courts may result in delay and disruption of an otherwise cohesive administrative scheme; (2) judicial review is best made upon a full factual record developed before the agency; (3) resolution of the issues may require the accumulated technical competence of the agency or may have been entrusted by the Legislature to the agency's discretion; and (4) a successful agency settlement of the dispute may render a judicial resolution unnecessary. [*Intl Bus Machines Corp v State, Dept of Treasury, Revenue Div*, 75 Mich App 604, 610; 255 NW2d 702 (1977)].

However, a party may seek judicial review of a nonfinal agency decision when a final agency decision would not provide an adequate remedy, or if pursuing the administrative remedy would be an exercise in futility. *Michigan Sup'rs Union OPEIU Local 512 v Dept of Civil Serv*, 209 Mich App 573, 576-577; 531 NW2d 790 (1995). To invoke the futility exception, "it must be *clear* that an appeal to an administrative board is an exercise in futility and nothing more than a formal step on the way to the courthouse. Futility will not be presumed; courts assume that the administrative process will properly correct alleged errors." *L & L Wine & Liquor Corp*, 274 Mich App at 358 (internal quotation omitted).

Defendant's Ordinance No. 41, governing water and wastewater, provides for water charges in "Article I. Water Service." Division B. describes water rates as including a water standby charge described in Sec. 1, a capital charge described in Sec. 2 and a usage charge described in Sec. 3. The "capital charge" described in Sec. 2 is also referred to by both parties as a "debt service charge" and represents the type of charge that plaintiff claims it overpaid due to defendant's miscalculation. Division D covers administration and provides the following:

> Any person has the right to appeal the basis of any charges imposed by this Ordinance or billed to same. Appeals shall be in writing, addressed to the Authority Board. Any such appeal shall be submitted no more than thirty (30) days after the date of the bill being contested. The Authority Board shall have the power to adjust a bill or charge if the appellant shows an error in the charge, but in no event shall any adjustment be retroactive more than three (3) months. [Division D, Section 2]

Article II governs sewer services and, at Division E describes sewer rates as including an annual standby charge, a capital charge (i.e., debt service charge) and sewer usage rate. Section 5 governs administration and provides at (c):

> Appeals. Any person has the right to appeal the basis for any charges developed in accordance with this Ordinance. Appeals shall be directed to the Authority along with any supporting documentation for amendment of the charges in question. . . . Resolution of appeals shall be made within 30 days by action of the Authority in accordance with best available data and the formulations presented in this Ordinance. . . . Upon resolution of the appeal, the Authority shall adjust said charges accordingly, including any refunds due. Refunds shall be retroactive to the previous four quarters billings only.

The debt service charges at issue were specifically provided for in the ordinance. Both the water and sewer sections of the ordinance provide that any person has the right to appeal "the basis of any charges imposed by this Ordinance or billed to same" with respect to water and "the basis for any charges developed in accordance with this Ordinance" with respect to sewer. The capital charges, or debt service charges, were imposed by the ordinance and developed in accordance with the ordinance. Thus, plaintiff had a right to appeal "the basis" for the water and sewer debt charges. "Basis" is "the foundation upon which something rests" or "the fundamental ingredient." *The American Heritage Dictionary* (4th ed.). The monthly charges for debt service were calculated by multiplying a specific dollar amount by the REU's assigned to a property. The foundation or fundamental ingredients for the debt service charges (i.e., the basis) were thus the specific dollar multiplier and the REU's assigned to the property and plaintiff had the right to appeal the same.

Plaintiff contends that the incorrect charges were based upon an inaccurate REU number determined by defendant, only, and the debt service charges were remitted to defendant, only, such that an appeal to the *Authority* as the ordinance required appeals be directed to, would not provide it with its requested relief of a refund from defendant. The trial court agreed, ruling in a one sentence analysis that plaintiff need not exhaust its administrative remedies with the Authority "as the Authority could not provide the relief that was sought. That can only be done . . . by the Township." In so ruling the trial court cited to *Cummins v Robinson Twp*, 283 Mich App 677; 770 NW2d 421 (2009).

In that case, a panel of this Court held, in part, that "the doctrine of exhaustion of administrative remedies would not deprive the trial court of its jurisdiction with respect to properly filed, viable common-law tort claims, such as fraud or gross negligence" and "where the administrative appellate body cannot provide the relief sought, the doctrine does not apply." *Id*. at 691. The *Cummins* Court, importantly, addressed a factual scenario where homeowners asserted tort claims against a township, members of its board of trustees, its building officials and others alleging that defendants fraudulently induced plaintiffs to incur unnecessary expenses and that defendants were grossly negligent with respect to building code requirements. This Court found that due to the nature of claims asserted against the defendants, "the plaintiffs' argument that the CBA [construction board of appeals] would not have jurisdiction to grant the relief they requested (money damages) has merit." *Id*. at 691.

Here, in contrast, Ordinance 41 provides for the water capital charge in relevant part as follows:

> The capital charge shall be billed as part of the bill for services rendered by the City of South Haven to all customers in the Township, and shall be established by the Authority Rule and Township Board Resolution from time to time. [Ordinance 41, Article I, Division B, section 2].

The ordinance provides for the sewer capital charge as follows:

> The capital charge shall be established from time to time by Authority Rule and Township Resolution. [Ordinance 41 Article II, Division E, section 2].

Contrary to plaintiff's assertion, then, both the Authority and Township Board establish the debt service charges.

The ordinance also specifically provides that administration and operation of the water and sewer systems in defendant township "shall be performed by . . . the Authority as agent of the Townships in accordance with applicable contracts with the City of South Haven and law." The Authority, as an agent of defendant, would implicitly have the authority to act on behalf of defendant and also explicitly had such authority based on the ordinance language providing that the capital charge was established by Authority Rule and Township Board Resolution. And, the ordinance specifically gave the Authority the power to adjust a bill or charge if the appellant shows an error in the charge. Because administration of the water and sewer system falls to the Authority, as an agent of defendant, and the debt service charges are established by Authority Rule and Township Board Resolution, plaintiff has not conclusively established that the Authority could not provide it with its requested relief—a refund of amounts allegedly overpaid in debt service charges to defendant. Thus, there can be no argument that plaintiff could not obtain its requested relief of a refund of overpayment from the Authority through an administrative remedy set forth in the ordinance—at least to the extent of the relief allowable under the ordinance.

Plaintiff also claims that an appeal to the Authority could not have granted it *all* of the remedy it sought because it was seeking refund of money overcharged over a span of 14 years and the appeal process provided for under the ordinance only provides for a retroactive refund of up to three months for water charges and up to four billing quarters for sewer charges. Although plaintiff does not explicitly state such, it is essentially claiming futility in seeking relief from the Authority for any asserted overpayments beyond those allowed under the ordinance.

Again, it must be *clear* that an appeal to an administrative board is an exercise in futility and nothing more than a formal step on the way to the courthouse to excuse exhaustion of administrative remedies. *L & L Wine & Liquor Corp*, 274 Mich App at 358. Where, as here, the ordinance provides a very limited time for which it will allow refund of overpayments and plaintiff is seeking refunds far beyond the allowed period on the basis of unjust enrichment, it is not unreasonable to conclude that the Authority would not grant the requested relief. This is especially so given that in response to plaintiff's request for refund of all of his alleged

overpayments, the Authority, the body to whom plaintiff was to direct an appeal, had an attorney write a letter on its behalf on September 26, 2013, declining to reimburse plaintiff and further advising plaintiff that no adjustment to water bills is retroactive for more than three months and that adjustments to sewer bills are retroactive only to the previous four quarters. Plaintiff's request for his full relief from the Authority clearly would have been futile. The trial court thus made the right decision, albeit for the wrong reason. A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason. *Gleason v Michigan Dept of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

## II. Failure to State a Claim

Defendant claims that the trial court erred in holding, without explanation, that plaintiff stated a claim for unjust enrichment. We disagree.

A complaint must contain "[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend . . . ." MCR 2.111(B)(1). "[T]he primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position." *Stanke v State Farm Mut Automobile Ins Co*, 200 Mich App 307, 317; 503 NW2d 758 (1993), citing 1 Martin, Dean & Webster, Michigan Court Rules Practice, p 186. Our Supreme Court has characterized MCR 2.111(B)(1) as consistent with a "notice pleading environment." *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 700 n 17; 684 NW2d 711 (2004).

A claim of unjust enrichment requires the complaining party to establish (1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party. *Karaus v Bank of New York Mellon*, 300 Mich App 9, 22-23; 831 NW2d 897 (2012). Our Supreme Court explained that unjust enrichment describes "the result or effect of a failure to make restitution of or for property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." *Buell v Orion State Bank*, 327 Mich 43, 56; 41 NW2d 472 (1950)(quotation marks and citation omitted).

In its complaint, plaintiff asserted that the dispute concerned over-payments for utility services for property located in South Haven. Plaintiff alleged that it began using water and sewer services, provided by defendant in July 1999 and that as part of its bill for services, defendant set and charged plaintiff certain amounts for water and sewer debt. Plaintiff asserted that the amounts billed for debt services were billed from and payable to the City, but that the amounts were remitted to defendant by the City under the terms of their franchise agreement. Plaintiff alleged that in September 2013, plaintiff notified defendant of overcharges for debt services and that defendant "acknowledged that the Plaintiff had been overcharged." Plaintiff alleged that defendant finally reduced the debt service amounts to the proper amounts in September 2013 but had overcharged plaintiff from July 1999 through August 2013 for debt services in a total amount of $93,807.90. Plaintiff asserted it was damaged by the overcharges in the stated amount and that defendant and the Authority had been unjustly enriched by the gain of the stated amount which was not rightly due defendant.

The above allegations sufficiently stated a cause of action for unjust enrichment. Plaintiff alleged that defendant received the benefit of monies not rightly due it from plaintiff (via third party City under a franchise agreement) and that an inequity resulted in that plaintiff was charged monies it did not owe. Considering the pleadings in a light most favorable to plaintiff, defendant was put on notice that plaintiff was seeking a refund of the alleged overcharges.

### III. Proper Party Defendant

Defendant asserts that the trial court erred in holding that it, and not the Authority is the proper defendant in this action. We disagree.

The franchise agreement allowing for the provision of sewer and water services was between the City and defendant (and Casco Township). The franchise agreement also provides at 16.f. that while the City would provide billing services and it would charge the *Townships* (i.e., defendant) a 2% billing fee—not the Authority.

Furthermore, *defendant* adopted Ordinance 41 governing water and wastewater, including the rates and charges allowed. Defendant does not deny, either, that it calculated the REU's to be assigned plaintiff's property, which forms the basis for plaintiff's allegation of a miscalculation and resulting overcharge of debt services. While the ordinance gave the Authority the power to administrate and operate the water and wastewater systems, it gave the Authority such power "as agent of the Townships." Moreover, just because the Authority has the power to adjust challenged bills does not mean that defendant cannot also do so. The grant of power does not contain the word "exclusive." As a result, the trial court properly concluded that defendant is the proper party to this action.

### IV. Question of Fact as to Whether Plaintiff Overpaid

Defendant asserts that the trial court erred in concluding as a matter of law that plaintiff had overpaid its water and sewer debt charges. We agree.

Notably, while plaintiff now states that the overcharges were based on an inaccurate REU determination made by defendant, that is not, specifically, what plaintiff stated in its complaint. Plaintiff's complaint does not challenge the monthly dollar amount to be multiplied for debt services nor does it challenge the REU's assigned to its property. Indeed, plaintiff's complaint simply states that the amount it began being billed for debt services charges in September 2013 was the correct amount and that it was "overbilled" for debt services from July 1999 through August 2013. Nowhere in the record is it even apparent what the monthly dollar multiplier was from July 1999 to March 2007. The trial court was provided with the minutes of a February 14, 2007, South Haven Township Charter meeting wherein the debt service charges for the water and sewer systems were "amended" to $20.00 per REU per month for the sewer system and $13.00 per REU per month for the water system, effective March 1, 2007. That is the extent of evidence concerning the monthly sewer and water date rate multiplier. Plaintiff attached only the franchise agreement to its complaint.

As to REU's, the only evidence shows that on January 14, 1998, defendant was assigned 19 REU's. Nowhere does plaintiff state or demonstrate what the REU's were in 2007 or what they are at present day.

-7-

The evidence supplied to the trial court by plaintiff consisted of: (1) portions of the franchise agreement, (2) a letter drafted by plaintiff's counsel and sent to defendant and the City on September 16, 2013, indicating that given recent adjustments to his bill, plaintiff had overpaid the water and sewer debt charges for many years "assuming the new rates are correct" and seeking reimbursement for the overpayments, (3) a September 26, 2013, letter from the Authority's counsel responding to the above to advise that the franchise agreement allowed for debt charges based on an estimated flow according to a formula using the REU table. The letter further stated that the franchise agreement allowed for metering to confirm that the REU estimate was accurate at the request and expense of the property owner and plaintiff made no such request. Plaintiff also supplied (4) the affidavit of Richard Faustman, owner of plaintiff, who attested that he did not know he was being overcharged for debt services until 2013 when the township supervisor saw plaintiff's current bills and advised that plaintiff was overpaying for its services. Faustman attested that the supervisor said he would take care of lowering the payments and within a few months plaintiff's payments were, in fact, lowered to the current amount. Finally, plaintiff supplied (5) the affidavit of John Wagner, a plumber who was present during the meeting between Faustman and the township supervisor and attested that he recalled the supervisor stating that plaintiff was overpaying on his water and sewer bills, that the supervisor wished he had known sooner and that he intended to set the rate and recheck it in one year to make sure the bills were accurate.

The other documents in evidence provide information that in 1998, plaintiff was assigned 19 REU's. REU factors chargeable to a hotel/motel, as set forth in Ordinance 41 are .4 per bedroom plus restaurant and bar. Bars are assigned 4.0 REU's per 1000 square feet. Restaurants are assigned 2.5 REU's per 1000 square feet (excluding restrooms, public areas, and unfinished areas) if they serve meals only, 3.5 REU's per 1000 square feet if they serve meals and drinks, and .5 REU's per 1000 square feet for their public areas and areas not in regular use. Evidence was also provided that as of March 1, 2001, the debt service charges for sewer systems set by defendant was $20.00 per REU per month and $13.00 per REU per month for water service and that as of September 2013 plaintiff has been charged $14.30 per month for water debt and $22.00 per month for sewer debt.

The trial court opined, without analysis, that the fact that plaintiff did not challenge the number of REU's did not have any bearing on its unjust enrichment claim. The trial court further opined that the amounts that plaintiff paid to defendant over the relevant years was not in dispute and that the parties could easily determine the amount that should have been paid upon the proper assessment "as has recently been done" so that there were no material questions of fact. However, considering that, as the trial court stated in its opinion on the record, plaintiff operates a hotel on the billed property, it is questionable whether billings from September 2013 forward are "correct" as plaintiff asserts. Each room in a hotel is charged .4 REU's. At $20 per REU per month for sewer and $13.00 per REU for water, a *single* hotel room would incur a charge of $8.00 per month for sewer debt and $5.20 for water debt. At oral argument on defendant's summary disposition motion, plaintiff's counsel stated that, "Up until last year [2013] my client's hotel only had one building with 15 rooms hooked up to the City water, the water provided by the Authority." Yet plaintiff's total monthly sewer debt charge post-September 2013, which it claims is correct and which it bases its monetary amount of overpayment on, is only $22.00 per month and the total water debt charge is only $14.30 per month.

-8-

Plaintiff presented no evidence concerning the size of the hotel, the bar, restaurant, etc. from which one could conclusively establish that defendant had miscalculated the REU's to assign the property and thus overcharged plaintiff for debt services. And, defendant did not admit that the REU's were incorrectly calculated or that it had overcharged plaintiff. The trial court's ruling that there were no genuine issues of material fact except as to damages was thus erroneous. The trial court could not have concluded, as matter of law, based upon the evidence presented, that defendant made a miscalculation of REU's at any time or had incorrectly billed plaintiff for debt service charges. Questions of material fact exist on this issue precluding summary disposition in favor of either party. Moreover, a motion for summary disposition is generally premature if granted before discovery on a disputed issue is complete. *Oliver v Smith*, 269 Mich App 560, 567; 715 NW2d 314 (2006). That is the case here.

## V. Limitations Period

Defendant next asserts that the trial court erred in failing to apply the limitations period prescribed in Ordinance 41. We agree.

Under MCR 2.116(C)(7), summary disposition is proper when a claim is barred by the statute of limitations. In determining whether summary disposition is appropriate under MCR 2.116(C)(7), this Court considers all documentary evidence submitted by the parties, and accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them. *Carmichael v Henry Ford Hosp*, 276 Mich App 622, 624; 742 NW2d 387 (2007).

It is well settled that ordinances are presumed valid and the burden is on the person challenging the ordinance to rebut the presumption. *Detroit v Qualls*, 434 Mich 340, 364; 454 NW2d 374 (1990). To meet this burden, a plaintiff must demonstrate that the ordinance allows an arbitrary exercise of government power. *People v Sierb*, 456 Mich 519, 523; 581 NW2d 219 (1998).

Here, Ordinance 41 requires one who disputes a water charge to appeal the bill within 30 days after the date of the bill being contested and limits any retroactive adjustments to water bills to three months (Article I, Division D, Section 2). The ordinance does not provide a 30-day limitation period for appealing a sewer charge but does require that resolution of the appeal be made within 30 days and limits retroactive adjustments of sewer charges to the previous four quarters billings (Article II, Division D, Section 5, sub (c)).

Contrary to plaintiff's assertion, the ordinance does not limit appeals to the water or sewer rates themselves. As indicated in Issue I, Ordinance 41 provides for appeals of "the basis of any charges imposed by this Ordinance or billed to same" with respect to water (Article I, Division D, Section 2) and "the basis for any charges developed in accordance with this Ordinance" as they relate to sewer charges (Article II, Division E, Section 5). As also indicated in Issue I, the basis of these charges includes capital charges (i.e., debt service charges)—the charges plaintiff asserts for which it was incorrectly billed. Plaintiff has not identified any statute or constitutional provision that expressly denies municipalities the power to require one disputing a water bill to do so within 30 days or limiting the retroactive adjustment of water bills to three months. Nor has plaintiff identified any provision denying municipalities the power to

limit retroactive adjustments of sewer charges. Plaintiff has also not claimed that the limitations are an arbitrary exercise of police power. It has thus not overcome the presumption that the ordinance and the provisions relied upon by defendant are valid.

Moreover, municipalities are authorized by constitution to operate public utilities. Const 1963, art 7 § 24. The authorization to operate utilities must include the responsibility to develop mechanisms to monitor their efficient administration. The ordinance provisions at issue provide a reasonable mechanism that advance the legitimate governmental interest of allowing defendant to efficiently administer services it is authorized to provide and to limit its liability when errors arise in the provision of the services.

The trial court did not address the periods of limitations set forth in the ordinance. It simply held that the 6-year limitations period applicable to unjust enrichment actions was applicable and that plaintiff was thus limited to seek a refund of only those overpayments made within 6 years prior to the filing of its first amended complaint. However, this Court is not bound by a party's choice of labels for its cause of action because this would place form over substance. See *Johnston v Livonia,* 177 Mich App 200, 208; 441 NW2d 41 (1989). Plaintiff claimed unjust enrichment but was undeniably seeking a retroactive adjustment to its water and sewer bills due to an asserted error on defendant's part. That is precisely what the ordinance addressed. The plaintiff having failed to establish that the ordinance limitations concerning retroactive adjustment periods was invalid, the trial court should have granted partial summary disposition in defendant's favor limited to the adjustment periods set forth in the ordinance—not the six year statute of limitations for unjust enrichment. We thus reverse the trial court's ruling concerning applicability of the 6-year statute of limitations and direct entry of summary disposition in defendant's favor limited to the retroactive adjustment periods set forth in Ordinance 41.[2]

Affirmed in part, reversed in part, and remanded for entry of partial summary disposition in defendant's favor limited to the retroactive adjustment periods set forth in Ordinance 41 and for further action not inconsistent with this opinion. We do not retain jurisdiction.


/s/ Michael J. Talbot
/s/ Deborah A. Servitto

---

[2] Given this conclusion, we need not address defendant's argument concerning laches.